IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAR 5 2004
MICHAEL W. DOBBINS
CLERK, U.S DISTRICT COURT

| | |
|---|---|
| DEXTER SAFFOLD, ) | |
| ) | |
| Plaintiff, ) | Case No. 03-CV-7283 |
| v. ) | |
| ) | The Honorable Joan B. Gottschall |
| STEADMAN REALTY COMPANY, ) | |
| ) | The Honorable Ian H. Levin, |
| ) | Magistrate Judge |
| Defendant. ) | |

### NOTICE OF FILING

DOCKETED
MAR 0 8 2004

TO: John B. Murphey
ROSENTHAL, MURPHEY & COBLENTZ
30 North LaSalle Street
Chicago, Illinois 60602

PLEASE TAKE NOTICE that on March 5, 2004, the undersigned caused to be filed with the United States Court for the Northern District of Illinois, Eastern Division, the **FIRST AMENDED COMPLAINT**, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

_Heather O'Farrell Townsend_
One of Plaintiff's Attorneys

Marc Kadish
Heather O'Farrell Townsend
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, Illinois 60603
(312) 782-0600

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEXTER SAFFOLD, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>STEADMAN REALTY COMPANY, )<br>)<br>)<br>Defendant. )<br>) | Case No. 03-CV-7283<br><br>The Honorable Joan B. Gottschall<br><br>The Honorable Ian H. Levin,<br>Magistrate Judge |

DOCKETED
MAR 0 8 2004

## FIRST AMENDED COMPLAINT

Plaintiff, Dexter Saffold ("Plaintiff" or "Dexter"), by and through his attorneys Mayer, Brown, Rowe & Maw LLP, complains of and against Defendant Steadman Realty Company ("Defendant" or "Steadman Realty") as follows:

### NATURE OF THE CASE

1. Plaintiff Dexter Saffold brings this action against Defendant Steadman Realty, seeking redress for Steadman Realty's refusal to make reasonable accommodations to its policies and practices on account of Dexter's physical disability. Steadman Realty's actions denied Dexter of an equal opportunity to use and enjoy his dwelling, in direct violation of 42 U.S.C. §3604. In addition, Steadman Realty coerced, interfered with and intimidated Dexter in connection with the exercise of his fair housing rights in violation of 42 U.S.C. § 3617. Dexter seeks damages resulting from Steadman Realty's unlawful conduct, including compensatory and punitive damages, declaratory and injunctive relief, and any other relief this Court deems just and proper.

14

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 42 U.S.C. §3613(a) due to the discrimination alleged in violation of federal housing law.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

4. Plaintiff Dexter Saffold, was and is a resident of the State of Illinois. He has resided at 3143 West 60th Street, 3rd Floor, Chicago, IL, 60629 since October 31, 2002.

5. Defendant Steadman Realty Company was and is an Illinois corporation that owned and managed the building located at 3143 West 60th Street, Chicago, IL, 60629 (the "Property") during the time period relevant to Plaintiff's claims. The offices of Steadman Realty are located at 6247 S. Pulaski, Chicago, IL 60629. Upon information and belief, Mr. Steadman served as the president and owner of Steadman Realty at all times relevant to this Complaint. In addition, Mr. Steadman was the record owner of the Property and served as Dexter's primary contact with Steadman Realty at all times relevant to this Complaint.

## STATUTORY LANGUAGE

6. 42 U.S.C. §3602(h) defines a "handicap", with respect to a person, as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, (3) being regarded as having such an impairment."

7. 42 U.S.C. 3604(f)(3)(B) states that discrimination against a handicapped individual includes: "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

8. 42 U.S.C. §3617 provides that it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised and enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 [42 U.S.C. §§ 3603, 3604, 3605, or 3606]."

9. 24 CFR Part 100, entitled "Discriminatory Conduct under the Fair Housing Act" states that under Section 100.24, a reasonable accommodation may be illustrated by the following example:

> Example (1): A blind applicant for rental housing wants to live in a dwelling unit with a seeing eye dog. The building has a "no pets" policy. It is a violation of §100.24 for the owner or manager of the apartment complex to refuse to permit the applicant to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person will not have an equal opportunity to use and enjoy a dwelling.

## GENERAL ALLEGATIONS

A. **Dexter Saffold's Physical Handicaps.**

10. Dexter suffers from diabetes. As a result of this disease, he developed open angle glaucoma. This eye condition greatly restricts his general field of vision, limits his left and right eye vision to 20/400 and renders him permanently, legally and industrially blind. Dexter's legal blindness results from irreversible and permanent tissue damage that greatly impairs his ability to

see objects at a distance and severely restricts his peripheral vision. Dexter's condition is degenerative and he has been warned by doctors that he may eventually lose his sight completely. [See letters from Dr. Robert G. Taub and Dr. David J. Palmer, attached as Exhibit "A"].

11. In January of 2002, Dexter's handicap forced him to retire from his job as a bus driver for Budget Rental Car and Chicago School Transit. He currently receives long term disability payments from Budget Rental Car and monthly disability payments from the Social Security Administration. Dexter's diabetes and his resultant health afflictions, including his vision disability and a heart condition, have made it virtually impossible for Dexter to obtain other employment.

**B.  Mr. Saffold Attempts to Gain a Reasonable Accommodation and Subsequently Files a HUD Complaint.**

12. On October 31, 2002, Dexter entered into a lease to rent a third floor apartment in the building that Steadman Realty owned and managed at 3143 West 60th Street, Chicago, IL, 60629. When Dexter agreed to rent the third floor apartment, he requested that Mr. Steadman apprise him of any future openings in first floor apartments. Dexter told Mr. Steadman that he preferred a first floor apartment as he experienced great difficulty negotiating stairs due to his vision impairment.

13. Beginning on October 31, 2002, Dexter regularly contacted Mr. Steadman and other employees of Steadman Realty, inquiring about an available first floor apartment.

14. In early July of 2003, an employee of Steadman Realty (not Mr. Steadman) informed Dexter that a first floor apartment in the same building Dexter resided in would be

available on July 31, 2003. On July 31, Dexter called Mr. Steadman and asked to view the apartment. Mr. Steadman stated he did not have the keys, but would be receiving them later that week.

15. Dexter responded by informing Mr. Steadman that he would be out of town through August 6th, visiting relatives. Mr. Steadman assured him the apartment would still be available upon his return. On August 7, 2003, Dexter called Mr. Steadman and Mr. Steadman told Dexter that he would show him the apartment later that afternoon. However, Mr. Steadman never showed up to let Dexter see the apartment.

16. On August 8, 2003, Dexter placed another call to Mr. Steadman, inquiring about the first floor apartment. Mr. Steadman told Dexter that a maintenance worker in the building had keys that Dexter could use to view the apartment. Dexter examined the vacant first floor apartment and promptly called Steadman Realty to inform them that he wanted to rent the unit. Unfortunately, Mr. Steadman had already departed for the day.

17. On August 11, 2003, Mr. Steadman called Dexter and scheduled a meeting with him at Dexter's apartment. During the meeting, Mr. Steadman expressed disapproval over Dexter's housekeeping. Dexter disagreed that his housekeeping was objectionable and reiterated his need for a first floor apartment due to his vision disability. Mr. Steadman refused his request.

18. Following Mr. Steadman's refusal to rent Dexter the first floor apartment, Dexter stated that he would alternatively be amenable to an accommodation in the form of a guide dog, to assist him in ambulating up and down the stairs. Mr. Steadman referred Dexter to a section of Dexter's apartment lease prohibiting tenants from keeping dogs at the Property and denied this request as well.

19. On August 13, 2003, Mr. Steadman sent a signed letter [attached as Exhibit "B"] formally denying Dexter occupancy of the first floor apartment on the grounds that (a) Mr. Steadman thought Dexter was a poor housekeeper and (b) Mr. Steadman's alleged observance of Dexter operating a vehicle, an activity Mr. Steadman felt was inconsistent with a vision disability.

20. On September 2, 2003, Dexter responded with a letter dated August 20, 2003 [attached as Exhibit "C"], revisiting the conversation of August 11, 2003 and formally reiterating his request for a guide dog. Dexter attached a series of doctors' letters to this correspondence, which collectively documented (i) the severity of Dexter's vision handicap and (ii) Dexter's application for a guide dog.

21. Dexter received no response from Defendant to his letter of August 20, 2003.

22. Dexter's eye doctor filled out an eye examination form on Dexter's behalf for submission to a guide dog company [attached as Exhibit "D"] and noted in a letter that Dexter was in need of a seeing eye dog to assist him in locomotion [attached as Exhibit "E"]. Following the company's receipt of Dexter's eye examination form, Dexter contacted the company about their training program designed to acclimate guide dogs to their new owners. Since Mr. Steadman denied Dexter's request to have a guide dog reside in the apartment, Dexter believed it would be futile to undergo the extensive training program and expense necessary to acquire a guide dog.

23. Unable to obtain a reasonable accommodation from Defendant, Dexter filed a Complaint in the Northern District of Illinois on October 15, 2003.

24. That same month, Dexter also contacted the United States Department of Housing and Urban Development ("HUD"). HUD continues to investigate this matter.

25. As a result of the Defendant's actions, Dexter suffered considerable psychological and emotional injury. Dexter fears for his health and safety on a daily basis as he is forced to navigate the numerous stairs between his apartment and the ground floor. Dexter also fears for his health and safety in the event of an emergency, such as a fire, that would force him to use the back staircase, which is unlit and in disrepair.

C. **Defendants' Retaliation Against Dexter**

26. On September 22, 2003, approximately a month after Dexter's first request for a reasonable accommodation, Dexter received notice of an increase in his monthly rent.

27. Subsequently, in October of 2003, following the filing of Dexter's complaint with the Northern District of Illinois, Dexter contacted Mr. Steadman to inquire about renewing his lease. Mr. Steadman told Dexter that (i) he would not receive a leasing agreement and (ii) Dexter's lease was no longer renewable on an annual basis, but instead would be renewed on a month-to-month term.

28. Mr. Steadman further informed Dexter that this change in the term was a direct result of Dexter filing a legal complaint against Mr. Steadman. Upon information and belief, Mr. Steadman has renewed the leases of other tenants on an annual basis and not on a month-to-month basis. In addition, upon information and belief, Mr. Steadman told others that he did not want Dexter living in the dwelling following the resolution of the pending litigation.

29.     Throughout the relevant period, Defendant knew about Dexter's disability. The Defendant was also aware that Dexter's disability caused him great difficulty and stress when entering and exiting his residence.

30.     Rather than agreeing to accommodate Dexter's disability in a reasonable fashion, the Defendant increased Dexter's rent and refused to renew his lease on an annualized basis, limiting him to a month-to-month tenancy. The month-to-month tenancy allows the Defendant to terminate Dexter's lease without cause on 30-days notice. In addition, this lease term enables the Defendant to carry out his alleged threat to terminate Dexter's lease following the conclusion of these legal proceedings.

## COUNT I
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. §3604(f))

31.     Plaintiff re-alleges paragraphs 1-29 of this Complaint and incorporates them by reference as though fully set forth herein.

32.     Plaintiff is an aggrieved person under Section 802(i) of the Fair Housing Act, 42 U.S.C. §3602(i).

33.     Dexter's permanent, legal and industrial blindness is a handicap as that term is defined in the Fair Housing Act 42 U.S.C. 3601 et. seq. and relevant regulations.

34.     As a result of his disability, Dexter requires an accommodation in order to be able to use and enjoy his dwelling.

35.     Defendant and its agents, with full knowledge of the importance of a safe and secure dwelling and safe ingress and egress from such dwelling, refused to make such an

accommodation and, as a result, denied Dexter an equal opportunity to use and enjoy his dwelling and caused him harm.

36. The conduct of Defendant constitutes an actionable discriminatory housing practice in violation of 42 U.S.C. §3604(f).

37. As a direct and proximate result of Defendant's acts alleged herein, Dexter has suffered and continues to suffer damage.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for compensatory and punitive damages, court filing fees, declaratory and injunctive relief, and such other relief this Court finds just and proper under the circumstances.

## COUNT II
## DEFENDANT'S COERCION, INTIMIDATION, THREATS AND INTERFERENCE IN VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. §3617)

38. Plaintiff re-alleges paragraphs 1-36 of this Complaint and incorporates them by reference as though fully set forth herein.

39. Defendant and its agents, with full knowledge of Dexter's attempts to exercise his fair housing rights, have coerced, intimidated, threatened and/or interfered with Dexter in the exercise of his fair housing rights in violation of 42 U.S.C. §3617.

40. The conduct of Defendant constitutes an actionable discriminatory housing practice in violation of 42 U.S.C. §3617.

41. As a direct and proximate result of Defendant's acts alleged herein, Dexter has suffered and continues to suffer damage.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendant for compensatory and punitive damages, court filing fees, declaratory and injunctive relief, and such other relief this Court finds just and proper under the circumstances.

### JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Date: March 5, 2004

DEXTER SAFFOLD

*[signature]*

Marc Kadish (ARDC #1378872)
Heather O'Farrell Townsend (ARDC #6256469)

MAYER, BROWN, ROWE & MAW LLP
190 South LaSalle Street
Chicago, Illinois 60603-3441
(312) 782-0600

Attorneys for DEXTER SAFFOLD, the Plaintiff

## CERTIFICATE OF SERVICE

I, Heather O. Townsend, an attorney, hereby certify that I caused a copy of the foregoing Notice of Filing, together with a copy of the **FIRST AMENDED COMPLAINT** to be served by messenger delivery upon the following before 5:00 p.m. on March 5, 2004:

> Mr. John B. Murphey
> ROSENTHAL, MURPHEY & COBLENTZ
> 30 NORTH LASALLE STREET
> CHICAGO, ILLINOIS 60602

_____
Heather O. Townsend

13153324.1 030504 1111C 04241867

# SEE CASE FILE FOR EXHIBITS